RECEIVED

**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

2007 MAR 19

DEBRA P. HACKETT, C
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| JANICE ABNER, | ) CIVIL CASE NO.  2:07CV146-WKW |
| | ) |
| Plaintiff | ) **NOTICE OF COMPLIANCE WITH** |
| v. | ) **ORDER BY THE COURT FOR** |
| ALABAMA BOARD OF | ) **SUBMISSION OF DOCUMENTS** |
| MEDICAL EXAMINERS, et al, | ) **DATING FROM 7/20/04 THRU** |
| | ) **9/18/06** |
| Defendants | ) |

TO HONORABLE SUSAN ~~WATKINS~~ Walker, MAGISTRATE OF THE UNITED

STATES DISTRICT COURT,

Plaintiff, Janice Abner does give notice to the Court of the filing of all

documents requested in the order dated March 9, 2007 which includes as

described verbatim by the Court in referenced order " A current copy of the

docket sheet reflecting all activity in the case plaintiff filled in 2004 in the

United States District Court for the Southern District of Alabama". The

docket sheet pertains to a complaint that pre dates the current complaint by

three (3) years .

Despite the hardship and duress incurred in compliance with the fore

referenced order , a copy of the year 2004 docket sheet has been found

-1-

stored among items in the garage in the garage , and is submitted with all

with all other required documents. The 03/09/07 order and notice from the

Court indicates possible dismissal of complaint for non compliance with

afore referenced order although Plaintiff has been informed by the Clerk of

the Court that said complaint has not been served on the parties , despite fact

complaint was filed done month earlier on  03/17/07 with the Court .

Plaintiff was not even informed of a case number until on or around March

7, 2007 and only upon inquiry by telephone to the Clerk of the Court.

    Plaintiff respectfully gives notice to the Court of submission of the

$350.00 filing fee fore complaint and withdraw application for pauperais

status although fact remains Plaintiff is on illness leave from employment

,and does not receive regular pay. A copy of the notice of placement on

illness leave is attached.

Dated March 14, 2007    By *Janice Abner*

Janice Abner , Plaintiff in Pro Se

on copy of notice of placement of plaintiff
on sick leave by employer still effective
$350.00 filing fee in the form of a u.s.
money order sent to Honorable Judge
W. Keith Watkins on date of this
Notice .

*Janice Abner*



# COMPTON UNIFIED SCHOOL DISTRICT
## HUMAN RESOURCES AND EMPLOYEE DEVELOPMENT

*Office of Employee Development*

July 26, 2006

CERTIFIED MAIL
7004 1350 0005 6643 3810

Janice Abner
888 Victor Ave. #16
Inglewood, CA 90302

Dear Ms. Abner:

This is to confirm that you have been placed on sick leave pursuant to Education Code, Section 44942, effective July 29, 2006.

Sincerely,

*Pattrice Sewell*

Dr. Pattrice Sewell
Senior Director
Human Resources & Employee Development

| Date Filed | # | Docket Text |
|---|---|---|
| 07/20/2004 | ❶1 | COMPLAINT against Brian Arcement, Jeffry Ickler, Donald Kirby, Gregory McGee, Mobile Infirmary Hospital, Michael O'Dowd, Maher Sahawneh, Phillip Travis, Terry Wilsdorf filed by Clarence Abner, Janice Abner. (Filing Fee $150, Receipt No. 47690)(tot,) (Entered: 07/23/2004) |
| 07/23/2004 | ❷2 | Service Notice entered 7/23/2004. Plaintiff to notify the Court the action taken to effect service and the results thereof. Service order deadline set to 9/7/2004. (copy to Plfs on 7/23/04)(tot,) (Entered: 07/23/2004) |
| 07/23/2004 | | ***Mailed summons forms to Plf to be completed & returned. (tot,) (Entered: 07/23/2004) |
| 07/30/2004 | ❸3 | Summons Issued as to Brian Arcement, Jeffry Ickler, Donald Kirby, Gregory McGee, Mobile Infirmary Hospital, Michael O'Dowd, Maher Sahawneh, Phillip Travis, Terry Wilsdorf. (tot,) (Entered: 07/30/2004) |
| 08/18/2004 | ❹4 | Return of Service Executed, Jeffry Ickler served on 8/18/2004, answer due 9/7/2004; Donald Kirby served on 8/18/2004, answer due 9/7/2004; Gregory McGee served on 8/18/2004, answer due 9/7/2004; Mobile Infirmary Hospital served on 8/18/2004, answer due 9/7/2004; Michael O'Dowd served on 8/18/2004, answer due 9/7/2004; Maher Sahawneh served on 8/18/2004, answer due 9/7/2004; Phillip Travis served on 8/18/2004, answer due 9/7/2004; Terry Wilsdorf served on 8/18/2004, answer due 9/7/2004. (tot,) (Entered: 08/20/2004) |
| 08/18/2004 | ❺5 | Return of Service, Brian Arcement served (via U.S. Mail) on 8/16/2004. (tot,) (Entered: 08/20/2004) |
| 08/20/2004 | ❻6 | Summons Re-issued as to Brian Arcement (same address as previous summons at Doc. 3). (mailed to Plf on 8/20/04) (tot,) (Entered: 08/20/2004) |
| 08/20/2004 | | ***Summons as to Brian Arecement, M.D., re-issued at Plf's request so that she may re-serve by cert. mail. (tot,) (Entered: 08/20/2004) |
| 08/24/2004 | ❼7 | MOTION to Dismiss by Donald Kirby, Maher Sahawneh, Terry Wilsdorf. (Referred to Judge Granade on 8/25/04)(tot,) (Entered: 08/25/2004) |
| 08/24/2004 | ❽8 | BRIEF in Support of 7 MOTION to Dismiss filed by Donald Kirby, Maher Sahawneh, Terry Wilsdorf. (Ref to J/Granade on 8/25/04) (tot,) (Entered: 08/25/2004) |
| 08/24/2004 | | ***Attorney W. Boyd Reeves for Terry Wilsdorf; Donald Kirby and Maher Sahawneh, Scott G. Brown for Terry Wilsdorf; Donald Kirby and Maher Sahawneh added. (tot,) (Entered: 08/25/2004) |
| 08/25/2004 | ❾9 | PRELIMINARY SCHEDULING ORDER entered. Rule 26 Meeting Report due by 10/12/2004. Signed by Judge Bert W. Milling Jr. on 8/25/04. (copies to parties on 8/25/04) (tot,) (Entered: 08/25/2004) |

| 08/25/2004 | ⬤10 | Order re: 7 MOTION to Dismiss filed by Terry Wilsdorf, Donald Kirby, Maher Sahawneh. Response due w/i 10 working days of receipt of the motion. Signed by Judge Callie V. S. Granade on 8/25/04. (copies to parties on 8/26/04)(tot,) (Entered: 08/26/2004) |
| --- | --- | --- |
| 08/31/2004 | | ***Received "Return of Service" on Brian Arcement, M.D. w/o green card on 8/30/04 showing that it was sent by cert. mail on 8/25/04. Called Ms. Abner on 8/31/04 & advised her that we needed the green card showing date of service before the return can be docketed. She advised that she has not received it yet, but will forward it to us as soon as she gets it. Placed "Return of Service" on correspondence side of file until green card is received. (tot,) (Entered: 08/31/2004) |
| 09/02/2004 | ⬤11 | MOTION to Dismiss by Michael O'Dowd, Phillip Travis. (Shegon, Patrick) (Entered: 09/02/2004) |
| 09/02/2004 | ⬤12 | Brief *in Support of Motion to Dismiss on Behalf of Defendants Designated as Philip Travis and J. Michael O'Dowd.* (Shegon, Patrick) (Entered: 09/02/2004) |
| 09/02/2004 | ⬤13 | Order re: 11 MOTION to Dismiss filed by Phillip Travis, Michael O'Dowd. Responses due w/i 10 working days of receipt. Signed by Judge Callie V. S. Granade on 9/2/04. (copies to parties on 9/2/04)(tot,) (Entered: 09/02/2004) |
| 09/07/2004 | ⬤14 | MOTION to Dismiss for Lack of Jurisdiction by Mobile Infirmary Hospital. (McCall, John Peter Crook) (Entered: 09/07/2004) |
| 09/07/2004 | ⬤15 | Brief re 14 MOTION to Dismiss for Lack of Jurisdiction filed by Mobile Infirmary Hospital. (McCall, John Peter Crook) (Entered: 09/07/2004) |
| 09/07/2004 | | ***Attorney Robert P. MacKenzie for Mobile Infirmary Hospital added. (tot,) (Entered: 09/08/2004) |
| 09/07/2004 | ⬤16 | Order re: 14 MOTION to Dismiss for Lack of Jurisdiction filed by Mobile Infirmary Hospital. Responses due w/i 10 working days of receipt of the motion. Signed by Judge Callie V. S. Granade on 9/7/04. (copies to parties on 9/8/04)(tot,) (Entered: 09/08/2004) |
| 09/10/2004 | ⬤17 | RESPONSE in Opposition to 7 MOTION to Dismiss filed by Clarence Abner, Janice Abner. (Ref to J/Granade on 9/10/04) (tot,) (Entered: 09/10/2004) |
| 09/10/2004 | ⬤18 | NOTICE of Omission of Page re: 17 Response in Opposition to 7 MOTION to Dismiss by Clarence Abner, Janice Abner. (Ref to J/Granade on 9/10/04) (tot,) (Entered: 09/10/2004) |
| 09/10/2004 | ⬤19 | Return of Service Executed, Brian Arcement served on 8/30/2004, answer due 9/20/2004. (tot,) (Entered: 09/10/2004) |
| 09/10/2004 | ⬤20 | MOTION to Dismiss *of Defendants' Gregory McGee and Jeffery Ickler* by Jeffry Ickler, Gregory McGee. (Frazer, Albert) (Entered: 09/10/2004) |

| 09/10/2004 | ○21 | Brief *In Support of Defendants' Gregory McGee and Jeffery Ickler Motion to Dismiss Complaint*. (Frazer, Albert) (Entered: 09/10/2004) |
| 09/13/2004 | ○22 | MOTION to Dismiss by Brian Arcement. (Reeves, W.) (Entered: 09/13/2004) |
| 09/13/2004 | ○23 | Brief re 22 MOTION to Dismiss filed by Brian Arcement. (Reeves, W.) (Entered: 09/13/2004) |
| 09/13/2004 | ○24 | Order re: 20 MOTION to Dismiss filed by Gregory McGee, Jeffry Ickler. Any responses due w/i 10 working days of receipt of the motion. Signed by Judge Callie V. S. Granade on 9/13/04. (copies to parties on 9/13/04)(tot,) (Entered: 09/13/2004) |
| 09/13/2004 |  | ***Attorney Scott G. Brown for Brian Arcement added - See Docs. 22 & 23. (tot,) (Entered: 09/21/2004) |
| 09/14/2004 | ○25 | RESPONSE to re: 17 Response in Opposition to Motion, 18 Notice (Other) filed by Donald Kirby, Maher Sahawneh, Terry Wilsdorf. (Reeves, W.) (Entered: 09/14/2004) |
| 09/20/2004 | ○26 | RESPONSE in Opposition to 11 MOTION to Dismiss, 14 MOTION to Dismiss for Lack of Jurisdiction filed by Clarence Abner, Janice Abner. (Ref to J/Granade on 9/21/04) (tot,) (Entered: 09/21/2004) |
| 09/21/2004 | ○28 | Order re: 22 MOTION to Dismiss filed by Brian Arcement. Responses due w/i 10 working days of receipt of the motion. Signed by Judge Callie V. S. Granade on 9/21/04. (copies to parties on 9/22/04)(tot,) (Entered: 09/22/2004) |
| 09/22/2004 | ○27 | RESPONSE to re: 26 Response in Opposition to Motion *to dismiss* filed by Michael O'Dowd, Phillip Travis. (Shegon, Patrick) (Entered: 09/22/2004) |
| 10/01/2004 | ○29 | RESPONSE in Opposition to 20 MOTION to Dismiss filed by Clarence Abner, Janice Abner. (Ref to J/Granade on 10/5/04) (tot,) (Entered: 10/05/2004) |
| 10/01/2004 | ○30 | RESPONSE in Opposition to 22 MOTION to Dismiss filed by Clarence Abner, Janice Abner. (Ref to J/Granade on 10/5/04) (tot,) (Entered: 10/05/2004) |
| 10/01/2004 |  | ***Deadlines terminated - See Doc. 30. (tot,) (Entered: 10/07/2004) |
| 10/05/2004 | ○31 | RESPONSE to re: 29 Response in Opposition to Motion *to Dismiss on Behalf of Defendants Gregory McGee and Jeffery Ickler* filed by Jeffry Ickler, Gregory McGee. (Frazer, Albert) (Entered: 10/05/2004) |
| 10/11/2004 | ○32 | REPORT of Rule 26(f) Planning Meeting. (Reeves, W.) (Entered: 10/11/2004) |
| 10/12/2004 | ○34 | REPORT of Rule 26(f) Planning Meeting by Clarence Abner & Janice Abner. (Ref to MJ/Milling on 10/13/04) (tot,) (Entered: 10/13/2004) |

| 10/13/2004 | 🔵33 | RESPONSE to 30 Reply in Opposition to 22 MOTION to Dismiss filed by Brian Arcement. (Reeves, W.) Modified on 10/14/2004 (tot,). (Entered: 10/13/2004) |
| 10/13/2004 | 🔵35 | NOTICE of Endorsement by Mobile Infirmary Hospital re: 32 Report of Rule 26(f) Planning Meeting (McCall, John Peter Crook) (Entered: 10/13/2004) |
| 10/13/2004 | 🔵36 | NOTICE of Endorsement by Jeffry Ickler, Gregory McGee re: 32 Report of Rule 26(f) Planning Meeting (Frazer, Albert) (Entered: 10/13/2004) |
| 10/14/2004 | 🔵37 | Objection re: 32 Report of Rule 26(f) Planning Meeting, 34 Report of Rule 26(f) Planning Meeting, 35 Notice of Endorsement, 36 Notice of Endorsement filed by Brian Arcement, Donald Kirby, Maher Sahawneh, Terry Wilsdorf. (Reeves, W.) (Entered: 10/14/2004) |
| 10/14/2004 | 🔵 | 37 Objection REFERRED to Judge Milling. NOTE: There is no image for this entry. (tot,) (Entered: 10/15/2004) |
| 10/15/2004 | 🔵38 | Notice of Endorsement re: 32 REPORT of Rule 26(f) Planning Meeting by Phillip Travis & Michael O'Dowd. (Shegon, Patrick) Modified on 10/15/2004 (tot,). (Entered: 10/15/2004) |
| 10/19/2004 | 🔵39 | Order re: 32 Report of Rule 26(f) Planning Meeting, 34 Report of Rule 26(f) Planning Meeting. Rule 16(b) Scheduling Order will not be entered until after rulings on all of the pending motions to dismiss. Signed by Judge Bert W. Milling Jr. on 10/19/04. (copies to parties on 10/19/04)(tot,) (Entered: 10/19/2004) |
| 10/19/2004 | | Set/Reset Deadlines: Miscellaneous deadline set for 11/19/2004 to follow-up on ruling on motions to dismiss & notify MJ/Milling when that has occurred - See Doc. 39. (tot,) (Entered: 10/19/2004) |
| 10/22/2004 | 🔵40 | REPLY to Dft Arcement's 33 Response to 30 Reply in Opposition to 22 MOTION to Dismiss filed by Clarence Abner, Janice Abner. (Ref to J/Granade on 10/25/04) (tot,) (Entered: 10/25/2004) |
| 11/17/2004 | | Reset deadline to follow-up on ruling on motion to dismiss & to notify MJ/Milling per doc. 39. Miscellaneous deadline set for 12/17/2004. (mab) (Entered: 11/17/2004) |
| 12/28/2004 | | Reset deadline to follow-up by 1/27/2005 on ruling on motion to dismiss & to notify MJ/Milling per doc. 39. (mab) (Entered: 12/28/2004) |
| 02/02/2005 | 🔵41 | ORDER, Dfts' 7 Motion to Dismiss, 11 Motion to Dismiss, 14 Motion to Dismiss, 20 Motion to Dismiss, 22 Motion to Dismiss are GRANTED & this case is DISMISSED. Signed by Judge Callie V. S. Granade on 2/2/05. (copies to parties on 2/2/05) (tot,) (Entered: 02/02/2005) |
| 02/02/2005 | | ***Civil Case Terminated. (tot,) (Entered: 02/02/2005) |

| 02/24/2005 | ➲42 | NOTICE OF APPEAL as to 41 Order on Motion to Dismiss, Order on Motion to Dismiss/Lack of Jurisdiction, by Clarence Abner, Janice Abner. Filing fee $ 255, receipt number 50374, copies to all ptys. (Clerk mailed Appellant's the TOI, Rules) (jal, ) Additional attachment(s) added on 2/25/2005 (jal, ). (Entered: 02/25/2005) |
| 02/24/2005 | ➲43 | USCA Appeal Fees received $ 255 receipt number 50374 re 42 Notice of Appeal, filed by Clarence Abner,, Janice Abner, ; USCA Case Number NEW (jal, ) (Entered: 02/25/2005) |
| 03/03/2005 | ➲ | NOTICE of Docketing Record on Appeal from USCA re 44 Notice of Appeal, filed by Clarence Abner,, Janice Abner,. USCA Case Number 05-11025-B (jal, ) (Entered: 03/03/2005) |
| 03/07/2005 | ➲44 | TRANSCRIPT INFORMATION FORM filed by Clarence Abner, Janice Abner NOT requesting transcripts re 42 Notice of Appeal, (jal, ) (Entered: 03/07/2005) |

Certified to be a true and
correct copy of the original.
Charles R. Diard, Jr.
United States District Court
Southern District of Alabama

*s/Jan A. Livingston*

s/Jan A. Livingston, Deputy Clerk

DATE:_____

**3/9/05**

# IN THE CIRCUIT COURT OF ALABAMA , FOR THE COUNTY OF MONTGOMERY

---

## PETITION FOR PEREMPTORY WRIT OF MANDATE

---

JANICE ABNER.

    Petitioner

    Vs.

ALABAMA BOARD OF MEDICAL EXAMINERS
    Respondent

      And

ALABAMA DEPARTMENT OF PUBLIC HEALTH
    Respondent

---

**PETITION FOR PEREMPTORY WRIT OF MANDATE**
Janice Abner
888 Victor Avenue , Unit # 16
Inglewood, California 90302
(310) 419-4563

# TABLE OF CONTENTS

Page

PETITION FOR WRIT OF MANDATE-----------------4

ISSUED PRESENTED------------------------------------4

INTRODUCTION---------------------------------------5

FACTUAL AND PROCEURAL HISTORY-------------6

ARGUMENTS IN SUPPORT OF REVIEW-------------13

CONCLUSION-------------------------------------------16

VERIFICATION ------------------------------------------18

CERTIFICATE OF SERVICE----------------------------22

## TABLE OF AUTHORITIES

42 USC, Section 1320 (a)(2)

42Code of Federal Regulation

## PETITION FOR WRIT OF MANDATE

Janice Abner , Petitioner, petitions the Circuit Court of Alabama

pursuant to Alabama Code of Civil Practice and the Alabama Constitution,

Article 1, Section 36. for a writ of mandamus compelling the Alabama

Board of Medical Examiners and Alabama  Department of Public Health to

perform a duty required of conduction by the latter state agency of a full

investigation of complaint of Petitioner to address all grievances as required

by the Alabama Constitution and for the former agency to commence and

complete investigation of complaint to address grievance .

### ISSUE PRESENTED

The issue presented is whether or not the two state agencies having

jurisdiction to receive, investigate and make determinations regarding

complaints alleging negligence by medical physicians of Alabama ,or a

medical entity have acted willfully and arbitrarily in failure to a complete

investigation or assume investigation as required by their office . The issue

as to Alabama Board of medical Examiners is whether the agency has

deviated from agency standards by conducting  only a partial investigation

of the complaint of Petitioner through selectively investigating only certain

charges in the complaint to the exclusion of other allegations ?

The issue is whether or not Alabama Department of Public Health has abandoned a duty required by agency by refusing to even assume jurisdiction over the complaint of Petitioner as required by State and Federal law?

## INTRODUCTION

Alabama Medical Commission (AMC) is a state agency with jurisdiction to to investigate complaints by citizens of Alabama or former citizens regarding the diagnosis and care provided by medical practitioners . A second agency, the Alabama Department of Public Health( ADPH) has jurisdiction to investigate in relation complaints regarding hospitals to include private entities that receive federal funds through services provided that are reimbursed in part by cost sharing by the Medicare . It is maintained said agency also has jurisdiction over the behavior of physicians submitted to the Alabama Board of Medical Examiners as the physicians acted in conjunction with the staff physicians at the hospital for diagnosis.

The complaint lodged in April 20067 to The Department of Public Health regarding the entity of Mobile Infirmary Medical Center the was never investigated despite correspondence stating an investigation would be conducted .,The Alabama Medical Board found all charges to include misdiagnosis, failure to exercise professional judgment and obtain informed

consent , and alleging of the triggering of a asthma attack by the negligence

of physicians as absent "merit." Without any reference to how determination

was made regarding the claim for misdiagnosis , lack of proper medical

judgment in the doctors ordering in conjunction with Mobile Infirmary

Medical Center  the insertion of  a foreign synthetic tube into the nose

leading to the stomach of a patient known diagnosed with pulmonary

asthma.

\ Therefore the Alabama Public health Department and the Alabama

Medical  Board has co jurisdiction over the claims of the physicians who

worked directly with staff at Mobile Infirmary medical Center, and an

determination as to negligence or non negligence can only be sustained

through a co investigation.

## PROCEDURAL HISTORY/FACTS

 **By this verified writ, Petitioner alleges as follows:**

1. On March 13, 2006 a complaint alleging misdiagnosis , failure to use

professional judgment to prevent triggering of a pre existent pulmonary

disease  of Lillian Abner who was a citizen of Alabama as was Petitioner at

such time , allegation of the performance of un required surgery through

misdiagnosis resulting in four day hemorrhaging from the area of a surgical

incision,  and failure to obtain the informed consent of patient nor family

6

was lodge to the Alabama Board of Medical Examiners (ABNE) an agency with jurisdiction to investigate and make determinations regarding the validity of complaints.. Said complaint contained charges against multiple physicians and medical entity, Mobile Infirmary Medical Center whom Lillian Abner was in the care of in 2002.

2. On March 27, 2006 Petitioner received correspondence from Mr. Larry Dixon, Director of the ABME declaring the agency would investigate the complaints of Petitioner forwarded to their agency.

2. Petitioner factually alleges a complaint was prior submitted by Petitioner on February 23, 2006 to the Alabama Hospital Association against Mobile Infirmary Medical Center , and a complaint also was sent to by the Office of The United States Attorney for  Southern Alabama to the Alabama Department of Public Health (ADPH). The complaint alleged (alleges ) negligence by Mobile Infirmary Hospital in regards to misdiagnosis by staff radiologist at Mobile Infirmary medical Center  in conjunction with the private physicians from Mobile Diagnostic and Medical Center.

3. On March 13, 2006 complaints were lodged by Petitioner to the Alabama Board of Medical Examiners( ABME) against multiple physicians and Mobile Infirmary Medical Center during the period patient Lillian Abner was in their care as a recipient of Medicare. . The charges in the complaint to

ABME alleged misdiagnosis, unnecessary surgery leading to continued post operative bleeding , negligence by inducement of a pre existent pulmonary condition in patient by insertion of a foreign synthetic tube into mouth to stomach , and failure to failure to implant a pacemaker .

4. Petitioner on March 13, 2006 also lodged a complaint against Mobile Infirmary medical Center to the Alabama Hospital Association. Thereafter correspondence was received on March 26, 2006 from Association informing Petitioner of lack of jurisdiction to investigate complaint, but giving notice that complaint would be submitted to the medical center.

6. On April 13, 2006 The Office of the United States Attorney  for the Southern Alabama  submitted a complaint to the Alabama Board of Medical Examiners (ABME) by Petitioner predicated on a recent findings in a 2005 post autopsy report of Lillian Abner. Said correspondence requested an investigation be conducted as to negligence by physicians determined in autopsy report . On the same date a complaint against Mobile Infirmary Hospital was also lodged by the Office of the United States Attorney to the Alabama Department of Public Health .

7. On April 25, 2006 the Alabama Board of Medical Examiners  submitted correspondence to the United States Attorney declaring that an investigation would be conducted of the complaints of Lillian Abner.

8. On September 12, 2006 Petitioner received a delinquent notice from Larry

Dixon , Director of the Alabama Board of Medical Examiners dated

September 7, 2006 declaring a determination had been made by the Alabama

Board of Medical Examiners on August 15, 2006 that the complaints of

petitioner  had no merits as to all allegations against physicians .The

delinquent notice of findings was submitted to petitioner by the ABME a

only after follow up on the status of the investigation m complaint .

9. On September 13, 2006 Petitioner called the Office of the United States

Attorney for Southern Alabama to make inquiry to Mr. Eugene Sideau,

Assistant Attorney as to whether an investigative report of the complaint

forwarded by his office to the Alabama Department of Public health had

been received . At such time  Mr. Sideau , Assistant United States Attorney

was away from the office.

10. On September 13, 2006 after calling the office of the United States

Attorney , Petitioner called the Alabama Department of Public Health for

inquiry as to whether the complaint against Mobile Infirmary Medical

Center lodged to their office dually by Petitioner and the Office of the

United States Attorney had been investigated. Upon speaking with

Supervisor Barbara Little, Petitioner was told no investigation had

commenced.

10. On September 14, 2006 Petitioner received a phone call from Ms. Deborah Rhodes , the United States Attorney For Southern Alabama. At such time the United States Attorney informed Petitioner that her office had not received any investigative report from the Alabama Department of Public health.

11. In regards to the complaint submitted to the Alabama Board of Medical Examiners , only notice and not an investigative report required by general agency guidelines governing investigations and findings was submitted to Petitioner by Mr. Larry Dixon , Director of the agency on September 7, 2006. The two paragraph statement of findings clearly reveals as contends that an investigation was selectively conducted as to charges in the complaint of Petitioner to the exclusion of some charges. Only a partial investigation occurred as to the findings by the agency.

12. The two paragraph findings by the ABNE as to determinations is absent any findings and conclusions establishing as without merit the allegations by Petitioner of misdiagnosis by physicians leading to un required surgery and prolonged post operative bleeding by patient Lillian Abner while in the care of physicians and hospital. In relation the determination by the Alabama Board of Medical Examiners (ABME) was made on selected facts , and the overlooking relevant facts documented in the medical records such as

documentation of prolonged and constant bleeding from the medical incision of patient Lillian Abner subsequent to unnecessary surgery cause by misdiagnosis... An agency does not have discretion to conduct an examination in such manner.

13. The findings by the Alabama Board of medical Examiners that an emergency laparotomy was performed after diagnosis of a CT scan is un factual as the medical records confirm that one hour and forty-five (45) minutes lapsed between the diagnosis and the performance of the lapratomy. Therefore sufficient time existed for physicians to order other diagnostic tests in view that the CT scan and another radiographic examination performed the same day were in conflict. Sufficient and ample time existed for the physicians to obtain the informed consent of patient in writing as required under Alabama law.

14. In relation to paragraph 13, medical research validates that if a CT scan or examination indicates occurrence of a life threatening condition, immediate medical intervention is warranted, and no consent from patient is needed . However misdiagnosis occurs when the intervention is performed hastily based on uncertainty due to conflicting radiological tests as found in Haskins Vs. Howard , (159 Tennessee. 86, 16 SW2d. 20,) However in the case of Brewer Vs. Ring , 177 North Carolina , 476, 99 SE 358 where

11

misdiagnosis resulted in immediate exploratory surgery performed on a pregnant woman resulting in no harm or injury to the patient from surgery due to misdiagnosis , and thereafter a healthy baby was born , determination was made that the physicians did no harm. In contrast, the complaint of Petitioner alleges that the misdiagnosis giving rise to unnecessary vascular surgery performed on Lillian Abner did result in injury , harm and death of patient as confirmed by medical records .

15. There is also misreporting by the Alabama Board of Medical Examiners in the two page notice declaring allegations of Petitioner as un meritious. The agency reports the diagnosis and laparotomy were performed on July 31, 2002 when in fact the medical records reveal the interventions were in fact performed on August 1, 2002

16. The two paragraphs of determination makes no finding regarding the charge that negligence by physicians and hospital triggered severe breathing problems by patient after surgery by doctors and hospital placing a synthetic tube into the mouth leading to the stomach of patient for four (4) days despite knowledge that Patient had a history of asthma.

17. The investigative findings by The Alabama Board of Medical Examiners as reported by a two paragraphs states no findings no findings of the charge in the complaint that physicians failed to place a pacemaker in patient after

securing her authorization by signature. The single page finding denies

excessive bleeding post operatively by patient from the area of the surgical

incision for four days as documented in the medical records occurred

18.Therefore in absence of employment of standard and national agency

norms and regulations for investigation and determination of complaints , it

is clear the Alabama Board of Medical Examiners made a partial

investigation based on selective investigation and response  to the charges in

the complaint by Petitioner.

11. MEMORANDUM OF POINTS AND AUTHORITES

ARGUMENT

**The Alabama Board of Medical Examiners Acted Arbitrarily ,
Willfully  And Without Discretion In Choosing To Partially Investigate
The Complaints of Petitioner**

The Alabama Board of Medical Examiners operates as a peer review

agency for Alabama in regards to complaints pertaining to services by

physicians in Alabama. All state agency must adhere to guidelines.

Although Petitioner has been unable to secure the guidelines and

regulations for operation by the ABME, Petitioner will use as norms for such

peer review group the standards adopted by the Department of Health and

Human Services for investigation ,fact finding and determination by Peer

review agencies under contract with the Department to investigate complaints of negligence by physicians providing service under Medicare. Pursuant to 42 USC, Section 1320-(a)(2), as amended, a peer review agency performs review functions of the quality of care in an area of medical practice where actual performance is measure against objective criteria which define acceptable and adequate practice.

Based on the function of Peer Review Groups pursuant to federal Code, it is submitted that the Alabama Board of Medical Examiners utilized subjective rather than objective and national norms and criteria to determine that no mis diagnosis by physicians and hospital occurred giving rise to unnecessary surgery and prolonged bleeding from surgical wound while the patient was in their care. Therefore their conclusion as an agency having jurisdiction to investigate and make determination of the complaint of Petitioner as submitted cannot be sustained regarding the conclusion that no misdiagnosis giving rise to unnecessary surgery occurred by physicians in the case of Lillian Abner

**B. The Alabama Department of Public Health Is Without Discretion To Choose Not To Investigate Complaint By Petitioner Due To The Fact That The Agency Is Under Contract With The Department Of Health And Human Services.**

A complaint was lodged by Petitioner to the Alabama Department of Public Health against Mobile Infirmary Hospital , a private medical entity receiving cost sharing through Medicare for services provided to Medicare recipients. Said complaint alleges misdiagnosis by hospital staff radiologist in conjunction with private physicians whom Lillian Abner was in their care The complaint also alleges failure by both the hospital staff and private physicians to obtain the informed consent of patient for exploratory surgery despite the fact that one hour and forty-five minutes lapsed between the time the CT scan giving rise to a misdiagnosis was done  and a laporatomy subsequently performed.

Pursuant to 42 Code of Federal Regulations , a medical entity receiving funds for cost sharing from the Department of health and Human Services is prohibited from performing surgery unless the informed consent is obtained from the patient , and when  impossible, it  must be obtained from a family member. Pursuant to Alabama Code a physician must obtain the informed consent of a patient before performance of surgery with exceptions when a

life threatening condition is discovered by examination of the patient. The

preclusion as fore stated was not in operation with Lillian Abner due to

ample time to obtain informed consent .

As fore alleged , Petitioner was informed on September 14, 2006 by the

Alabama Department of Public Health that no investigation of the complaint

against Mobile Infirmary Medical Center lodged  with the public agency in

April 2006 has been investigated. The Alabama Department of Public

Services does have  jurisdiction to investigate complaints alleging

negligence by Alabama hospitals and physicians . Due to the fact the agency

is under contract with the Department of Health and Human Services ,

agency is without discretion to chose whether or not to investing ate

complaints and make findings.

### 111 CONCLUSION

Based on the foregoing facts and arguments it is clear the fore named have

acted willfully and arbitrarily to perform a duty required by their agencies

and assumed discretion un afforded . Petitioner respectfully requests that the

Court issue a writ of mandate compelling the Alabama Board of Medical

Examiners and Alabama Department of Public Health as State agencies to

submit findings of all the complaint of Petitioner  as is standard and

customary by an agency of findings of all allegations by Petitioner

Prayer:

 Petitioner prays for as follows:

That the Board of Medical Examiners of Alabama submit findings  of

alleged negligence by physicians unreported by the Agency as follows :

1.Findings and conclusions regarding the complaint of misdiagnosis, 2.

Findings and conclusions regarding the allegation of  negligence resulting in

the triggering of pulmonary difficulties in patient Lillian Abner after

exploratory surgery performed in regard to factually allegation of insertion

of a synthetic tube into the mouth leading to the stomach of patient Lillian

Abner who had pre existent diagnosis of asthma as known to the physicians ,

3.  Findings and conclusions  regarding allegation by petitioner of failure to

implant a pacemaker after obtaining the authorization for implantation by

patient , 4. Findings and conclusions regarding allegation by Petitioner of

the failure to obtain informed consent for surgery despite one hour and forty

five minute time lapse between CT scan diagnosis and commencement of

exploratory  surgery and, 5. Explanation of the profuse bleeding that

occurred after surgery necessitating insulin injections order by treating

physician despite patient had no history of diabetes.

**2.** That these omitted findings be submitted by the Board of Medical

Examiners of Alabama to Petitioner within ten (10) days after a writ is

issued or voluntarily . (When a duty is performed before the issuance of a writ , an alternative writ will not issue) .

3. The Court to issue a writ of mandate commanding the Alabama Department of Public Health, a state agency  commence an investigation of the complaint against Mobile Infirmary by Petitioner Hospital as required by duty within 45 days .

4. For reimbursement for cost of the writ to be equally divided as to cost and be paid by the agencies .

Dated: September ⟋⟍, 2006    Respectfully Submitted by:

*Janice Abner*

Janice Abner, Petitioner In Pro Per            .

## VERIFICATION

I , Janice Abner am the Petitioner in pro per in this matter, and in connection with this writ , I am familiar with the proceedings and files described in and the subject of this petition , and know the facts set forth in this petition to be true and correct.

I declare under the laws of the penalty of perjury of the State of Alabama that the foregoing is true and correct.

Dated: September ___, 2006    By : _____

Janice Abner, Petitioner

**Declaration of Petitioner Janice Abner In Support of A Writ of Mandate**

I Janice Abner as Petitioner and Declarant  have personal knowledge of the facts presented in this delaration, and if called upon could and would competently do so.

1. On 4/13/06 I filed a complaint against nine private physicians alleging negligence and misdiagnosis while Lillian Abner , mother was in their care to the Alabama Board of medical Examiners (ABME). The complaints were based on post autopsy findings by autopsy performed by Glenoakes Pathology Associates of Los Angeles County, California. I received on ------ -correspondence from Mr. Larry D be conducted by the state agency  . Submitted as Exhibit "A" is a true copy of the correspondence from the ABME.

2. On 4/14/06 I lodge a complaint  alleging negligence by medical misdiagnosis against the Mobile Infirmary Medical Center to the Alabama Hospital Association. I received on correspondence dated 4/22/06 acknowledging receipt of complaint but lack of jurisdiction to perform an investigation . Notice was given that the complaint would be forwarded to the Mobile Infirmary medical Center. Submitted as Exhibit "B" is a copy of the notice from the Alabama Hospital Association.

3. On 4/13/06 the complaint against Mobile Infirmary Medical Center incorporating allegations also of negligence by the private physicians identified in the complaint lodged to the ABNE by Petitioner was by the office of The United States Attorney for Southern Alabama to both the Alabama Board of Medical Examiners and The Alabama Department of Public Health.. Submitted in respective order of "C" and "CC" are complaints submitted to both state agencies by the Office of the United States Attorney.

4. On 4/30/06 I received a copy of a correspondence submitted to the Office of the United States Attorney by Patricia Shaner, General Counsel for ABME declaring that investigation would be conducted of the complaint submitted to their agency by the federal agency on behalf of Petitioner . Attached as Exhibit "D" is an authentic copy of the correspondence from Patricia Shaner, General Counsel for ABME.

5. I received on 5/13/06 from the Office of The United States Attorney a copy of a correspondence from the Alabama Department of Public health declaring the agency would investigate the complaint against Mobile Infirmary Hospital . Submitted as Exhibit "E" is a true copy of from the agency declaring an investigation of the complaint of Petitioner's complaint

sent to the Office of the U. S. Attorney against Mobile Infirmary Medical Center would be investigated.

6. On 9/10/06  I received a one and one- fourth page notice dated August 15, 2006 from Mr. Larry Dixon , Director of the finding and conclusions reached by the Alabama Board of Medical Examiners regarding the multiple complaints alleging negligence and misdiagnosis by name private physicians in conjunction with the Mobile Infirmary Medical Center . The agency only forwarded the notice of determinations , findings and conclusions and made by the Board of Medical Examiners on August 15, 2006 after I made inquiry when the investigation would be concluded. Submitted as Exhibit "F" is the notice rather than a report of findings from the state agency  having jurisdiction to investigate complaints regarding medical care rendered by Alabama physicians.

   I declare under the laws of penalty of perjury for the State of Alabama that the foregoing declaration is true .

Dated: September ⟋8 2006   Respectfully Submitted by:

*Janice Abner*

Janice Abner, Petitioner In Pro Per

## CERTIFICATE OF SERVICE

On September 18 , 2006I served this petition upon the Circuit Court of

Montgomery County, Alabama to be served upon Respondent as follows :

1. Alabama Board of Medical Examiners
Patricia E. Shaner, General Counsel
848 Washington Avenue
Montgomery, Ala. 36104
P.O. Box 946,Momthomery, Ala. 36101-0946

2. State of Alabama Department of Public Health
   Barbara A. Little, R.N., L.N.C., Paralegal
   The RSA Tower
    201 Monroe Street
    Montgomery, Ala. 36104
   P.O. Box  303017

Janice Abner
888 Victor Avenue, Unit 16
Inglewood, California 90302
(310) 419-4563


CIRCUIT COURT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| JANICE ABNER, | ) CASE NO CV06-2673 |
| | ) Complaint For Damages for |
| | ) |
| Plaintiff | ) **Fraud ; Alabama** |
| | ) **Code 6-5-101; and** |
| Vs. | ) **Code 6-5-102** |
| | ) |
| MOBILE INFIRMARY | ) **Medical Malpractice** |
| MEDICAL CENTER, et al | ) **Alabama Code, Section** |
| | ) **6-5-548** |
| Defendant | ) |
| | ) **Failure To Obtain Informed** |
| | ) **Consent, Alabama Code,** |
| | ) **Section 6-5-484** |
| | ) |
| | ) **Wrongful Death,** |
| | ) **Alabama Code, Section** |
| | ) **6-5-410** |
| | )_ |

_____

## 1. INTRODUCTION

This is a complaint for fraud, medical malpractice and wrongful

death brought seeking punitive damages against Mobile Infirmary

Medical Center and eight private physicians , Associates /Affiliates


EXHIBIT
A

with the Diagnostic and Medical Center of Mobile, the Nephrology

Associates or other medical groups.

The medical malpractice claim alleges negligence, misdiagnosis,

battery by failure to obtain informed consent, breach of duty under

authorization to act, , failure to provide standards of care required by

professional norms , failure to use medical judgment in relation to

training. p

Said fore referenced did give rise to extreme physical and ,

wrongful suffering and psychological anguish prior inexistent, and

did cause thereafter the abbreviation of life of Lillian Abner by

death...A claim for fraud and concealment of evidence pursuant to

Alabama Codes 6-5-48 and 6-5-410 is incorporated in the complaint

in relation .

## 11. JURISDICTION/VENUE

The Circuit Court of Alabama has jurisdiction over this

complaint as the causes of action alleged are under Alabama Codes

and therefore arise from state law. law . Venue lies with the Circuit

Court of Mobile County as the alleged action transpired in said

County.

A statement regarding equitable tolling and suspension of running of the statue of limitations applicable to timely filing of this complaint is at the conclusion of the Facts premising the complain

### 111. PARTIES

1. Plaintiff Janice Abner,  is  an Afro American female born and raised in Mobile Alabama, who was employed by Mobile County before locating primarily to Los Angeles County California . Janice also however held dual citizenship in the state of  Alabama and California as property was owned in Mobile, Alabama at the time of the death of Lillian Abner , and until December 2002.

2. Defendant  Mobile Infirmary Medical Center is, and operates as a private medical entity doing business in Mobile Alabama .

3. Co Defendant Brian Arcement, is a medical physician who practiced Cardiology at the privately owned Mobile Diagnostic and Medical Center  in July and August 2002. Brian Arcement relocated to to Ft. Myers, Florida  in November 2002.

4. .Co Defendant Jeffery Ickler is a medical physician and surgeon in private practice who practiced in Mobile Alabama at the Diagnostic and Medical Center in Mobile, Alabama, a private medical group...

3

5. Co Defendant Donald Kirby is a medical physician in private practice specializing in internal medicine and gastroenterology practicing and who practiced at the Diagnostic and Medical Center in Mobile Alabama, a private medical group..

6. Co Defendant Gregory McGee is a medical physician and Surgeon in private practice who practices in Mobile, Alabama.

7. Co Defendant Michael O'Dowd is a medical physician who practices in Cardiology in private practice in Mobile, Alabama.

8. Phillip Travis is a medical physician practicing Nephrology with the Nephrology Associates, a private entity in Mobile, Alabama.

9. Co Defendant Maher Sahawnah is a medical physician practicing Pulmonary and Respiratory Medicine at Diagnostic and Medical Center, A Private medical group in Mobile, Alabama

10. Co Defendant Terry Wilsdorf is a medical physician who practices in Cardiology at the Diagnostic and Medical Center, a private entity in Mobile, Alabama.

## PRELIMINARY STATEMENT

On June 26, 2006 , Plaintiff Janice Abner filed a petition with the Probate Court of Alabama seeking to be named Executor or Legal Representative of the Estate of Intestate Lillian Abner, or in the

4

alternative appointment by the Probate Court of an executor or legal

representative. On July 26, 2006 Petitioner was informed

telephonically by Supervising Clerk of Probate Court Carol Ann

George upon inquiry as to the status of the status of the petition that

the Petition had not been assigned to a Judge and was being returned

as Alabama law requires that a legal representative reside in the state

as a bond as a bond is needed.

In regards as the Petition by Janice Abner Janice in the alternative

requested appointment by Probate Court of an executor for the Estate

of Lillian Abner , the Clerk of Probate Court on July 25, 2006

informed Plaintiff as Petitioner on July 25, 2006 that a County

Executor could be appointed by the Court to serve as executor of

estate of Lillian Abner in lieu of daughter Janice. However Supervisor

Carol advised Plaintiff as Petitioner that the person serving as

Administrator for the County of Mobile was Frank Kruse, and advised

me to contact Mr. Kruse at (251).  Plaintiff did contact Mr. Kruse by

telephone, and call was not returned. Plaintiff did ask the clerk in

relation to submit Petition to the Court for a judgment as the Court is

to appoint a county administrator. .

IV FACTS

1. Lillian Abner, Decedent was born and reared in Mobile, Alabama, and died therein on August 5, 2002.

2. Lillian married Clarence Abner and from union an only child Janice was born.

3. On or around year 1997 Lillian was diagnosed with end stage renal disease arising from a history of hypertension frequently untreated prior to diagnosis. Lillian's health history in addition was significant for pre existent respiratory asthma, and in 2001 Decedent was diagnosed with atrial fibrillation of heart arising from renal problems, Patient also suffered occasionally from arthritis, but as known incurred no chronic pain due to the kidney nor heart disease. Lillian Abner had habitually over five years drove herself three times weekly to dialysis center rather than be transported by van over the past four year.

4. Lillian as known did require regular outpatient or emergency care at Mobile infirmary medical Center arising from free bleeding from the shunt in arm to access vein for hemodialyisis upon removal of bandages.

5. Clarence was diagnosed on or around 1998 with Parkinson disease, and subsequently incurred mini strokes resulting in vascular dementia,

6. In year 2000, both Clarence and Lillian Abner legally conveyed the property of their only home to Janice. The property was sold immediately after death of Lillian, and Clarence located to California with Janice. There was no will ever made, and the family was only beneficiary to, and received a $200.00 death benefit.

7. Plaintiffs hereby factually alleges that Lillian Abner informed Janice in early July 2002 of the necessity to undergo the medical non invasive procedure of cardioversion due to fore referenced atrial fibrillation . Janice arrived in Mobile, Alabama on July 20, 2002 prior to the procedure and met with Brian Arcement , Cardiologist who was to perform , and did perform the procedure on 7/31/02. Lillian had been on medication therapy to include the drug Caumadin , a blood thinner relative to the atrial fibrillation.

8. Plaintiff factually allege that on prior day of 7/30/02 Lillian entered as ambulatory and unassisted the outpatient center of Mobile Infirmary Medical Center at the order of Brian Arcement for performance of a cardioversion. Said cardioversion was unsuccessful , and thereafter on the same day the same day Michael O'Dowd, Cardiologist and Consultant to Brian Arcement secured the signature of Lillian Abner to implant a pacemaker.

7

9. Lillian was prior treated from with the drug Caudamin , a blood thinner by said doctor during the pre cardioversion period. After failed cardioverson the medication was temporarily discontinued at the advice of Michael O'Dowd, Cardiologist for one day, Caudamin, a blood thinner was resumed in the treatment for irregular heartbeat thereafter after one day.

10. Factual allegation is made that Lillian required hemodialysis for kidney renal problems three times weekly. Hemodialysis was ordered by Primary Care Physician Phillip Travis, Nephrologist on 7/31/02 the day following failed cardioversion. The drug Hephrin, also a blood thinner was also routinely ordered used in the hemodialysis solution by Dr. Travis as an anticoagulant as is customary with all patients received In relation , Lillian on several prior occasions as witnessed by Janice or neighbor Octavia Packer had been rushed to the emergencyward of Mobile Infirmary medical Center for profuse bleeding after the removal of bandages from arm covering graft that accessed vein for dialysis.

11. Allegation is made that on 7/31/02 the day following failed cardioversion, Brian Arcement physician informed Lillian that

8

pacemaker was placed on hold. Lillian insisted that she wanted

pacemaker implanted that day, and family were educated in

relation to purpose of the device.

12. Plaintiff factually allege Janice, Daughter of Decedent reported

to Mobile Infirmary Medical Center on 8/01/02 at noon at found

Lillian asleep . Upon inquiry to the nurse if the pacemaker had been

implanted as scheduled , Janice was told no such procedure has

transpired, , and nurse reported that Lillian the prior night had

experienced vomiting, complained of gastric pain and evidenced a

bloody stool.

13. It is factually alleged that later in the afternoon on August 1, 2002

commencing at 2:30 p.m. in reference to paragraph "10 "

Gastroenterologist/Internist Donald Kirby   absent consent of Lillian

or the Abner family,  and  upon orders from Brian Arcement and

Michael O'Dowd, did secure two (2) radiological tests performed by

different hospital staff radiologists at Mobile infirmary Medical

Center. Said radiological exams were performed  in regards to the

reported symptoms manifested by Lillian the prior night. Said tests

and diagnoses by Kirby and Radiologist Richard Wilson were

completed at 5:15 p.m. on the same  day.

7

14. It is factually alleged the initial test performed by Hospital Staff Radiologist William Dumas results yielded no presence of disease in the abdominal area. . Plaintiff factually alleges Donald Kirby, M.D. thereafter ordered a second test of CT scan performed by Hospital Staff Radiologist Richard Wilson on the abdominal area of Lillian Abner and said CT scan was misdiagnosed by Dr. Kirby in conjunction with Staff radiologist for Mobile Infirmary Medical Center as a messenteric thrombosis of the abdominal area. ( Blood clot in the bowel area. ) No third test was ordered despite the conflict in results of tests, and sufficient time between latter exam and the surgery from misdiagnosis that ensued.

15. Plaintiff factually alleges Phillip Travis , Primary Care Physician and Brian Arcement after the radiological exams and diagnoses made on 8/01/02 failed to provide any consultation to Donald Kirby , Gastroenterologist/Internist regarding other possible origin of abdominal symptoms complained of by Lillian as to regards to the diagnoses. Said consultation never occurred although aware Lillian received treatment by blood thinners prescribed by both physicians as fore alleged in paragraphs 9 and 10.The Drug Hephrin used in the

dialysis solution is shown by medical literature to trigger gastric

cramping and bloody stools.

16. Plaintiff alleges Dr. Travis as a Nephrologists consented on

8/01/02 for vascular surgery performed on Lillian Abner in regards to

the diagnosed mesenteric thrombosis of the abdominal artery although

aware symptoms of bleeding or appearances of bloody stool are

frequently manifested by patients on hemodialysis due to the drug

Hephrin used in the solution as a blood thinner.

17. Plaintiff further allege despite knowledge as a Nephrologist that

patients dependent on, and receiving  hemodialysis often show bloody

or dark bowel stools and stomach cramps, Phillip Travis, M.D.  failed

to order a third radiological exam performed after the radiological

tests performed on Lillian Abner at the order of Donald Kirby were in

conflict. in view that the two radiological test results obtained by

Donald Kirby , M.D. were in conflict.

18. Plaintiff factually allege that Brian Arcement as admitting

physician due to failure to implant pacemaker after failed

cardioversion, and  resumed medication therapy of Caumadin, a blood

thinner to Lillian Abner on 8/02/02. Phillip Travis as Primary Care

Physician Travis ordered that the drug Hephrin ,also a blood thinner

be used routinely in the dialysis solution.

19.  It is alleged due to receipt of therapy by  the two blood thinners

simultaneously it was known or should have been known by Brian

Arcement , medical affiliate Donald Kirby and Phillip Travis that

Lillian was at risk for free bleeding from invasive  vascular surgery as

such dialysis patients as established by medical literature bleed freely

from wounds, cuts, or bruises. As prior alleged ,  Lillian had on

several occasions been rushed to the outpatient center of Mobile

Infirmary Medical Center due to bleeding after removal of the

bandage from the shunt in arm needed for access to vein after

receiving dialysis.

20.Plaintiff allege that  on 8/01/02 daughter Janice  , unbeknownst

that radiological tests had been performed earlier the same day

reported to the medical center at 6:00 p.m. , and found Lillian still

asleep. Thereafter, daughter was summoned to the nurses station to

receive a telephone call from Brian Arcement , Admitting Physician.

Said Physician at such time  declared that Lillian earlier that day was

diagnosed with a blood clot to abdominal area requiring immediate

surgery, and that surgeon Gregory McGee was en route to hospital.

12

Permission to Gregory McGee to perform surgery had been obtained

from both Drs. Phillip Travis and Brian Arcement based on

inconclusive radiological tests obtained by Donald Kirby,

Gastroenterologist.

21. It is factually alleged that Lillian prior to entering the hospital for

cardioversion had been diagnosed with pulmonary asthma known to

both Physicians Brian Arcement and Phillip Travis. Both physicians

knew, or should have known in relation, that Lillian was at risk for

incurring allergies resulting in major asthma attacks from invasive

abdominal surgery due to fact of necessity after abdominal surgery

of implantation of a synthetic tube from the mouth to the stomach for

feeding . Medical research proves synthetic fibers placed inside such

patients cause allergies that trigger pulmonary asthma. Said tube was

implanted in the patient immediately after abdominal surgery on

8/01/02.

22. Allegation is made that 7:15 p.m. on 8/01/02 after completion of

radiological tests on Lillian Abner ,Terry Wilsdorf , Cardiologist from

Mobile Medical and Diagnostic Center arrived at Mobile Infirmary

medical Center and awakened Lillian. Thereafter Gregory McGee ,

Surgeon spoke to daughter stating a blood clot was in the abdominal

13

region, and intent to operate. Over the adamant objection from

daughter Janice , and absent obtaining the informed consent of Lillian

who Lillian who was kept sedated the entire day in the earlier p.m. so

that daughter could nor speak with her , and was taken to the surgical

room while sedated where vascular exploratory surgery was

performed by Gregory McGee assisted by Gregory Ikler and Terry

Wilsdorf as a monitor.

23. Allegation is factually made that approximately ninety (90)

minutes after completion of radiological diagnosis Lillian was placed

under general anesthesia by a staff anesthesiologist as to the suspected

blood clot which was a misdiagnosis, and invasive and vascular

exploratory surgery was performed by Gregory McGee with Jeffery

Ickler, M.D. without obtaining the written consent of patient , and

over the adamant objections of Daughter , Janice Abner. Dr. McGee

in relation to paragraph 22 knew that Lillian was dependent on

dialysis , and that such patients bleed freely from injury or bruise. Dr.

McGee had two years earlier performed surgery on the arm of Lillian

to adjust shunt in arm for access to vein for dialysis

24. In relation to the preceding paragraph , Plaintiffs allege present in

the operating room were Terry Wilsdorf, M.D., a staff pulmonary vent

doctor and staff nurses without the consent of patient nor family to

perform or assist with any medical intervention.

25. Factual allegation is made that approximately one hour after

commencement of surgery, Janice received a call from Gregory

McGee , surgeon declaring that no disease was found in the

abdominal area, thereby confirming a misdiagnosis of messenteric

thrombosis of the abdominal area. The gastric pain was post

operatively diagnosed as only gastritis in relation to the misdiagnosis

of Donald Kirby and Staff Radiologist Richard Wilson of Mobile

Infirmary Medical Center that led to the invasive vascular surgery..

26. It is factually alleged immediately after abdominal surgery a

gastric latex tube was inserted into the throat and stomach of Lillian to

allow liquid feeding as the abdominal surgery precluded feeding of

solid foods.

27. Plaintiff's allege that on 8/02/08 the day following surgery Lillian

began having severe breathing problem . The staff radiologist at

Mobile infirmary Medical Center at the orders of Brian Aecement

performed two radiological examinations of the lungs and chest of

Lillian Abner in relation and found no pneumothorax present in their

diagnostic reports. The family was never informed of such breathing

15

problems or additional radiological examinations, nor knew of the tests. . At such time Lillian was continually bleeding freely from the abdominal surgical incision, and a old synthetic tubes were being removed from the mouth leading to the stomach, and replaced by new tubes on the orders of the physicians. Patient at such time was receiving morphime injections due to pain, in addition to hemodialysis.

28. The Abner family was never informed of the above referenced breathing problems by physicians, and Maher Sahawneh, Pulmonary physician examined patient twice on 8/02 and 8/03, 2002 at the order of Brian Arcement , admitting physician and wrote reports absent obtaining consent of family or patient, nor disclosing such results to family who was unaware of any breathing problems.

29. It is factually alleged that on 8/03/02 the third day after surgery the pulmonary function was so compromised by the insertion of the synthetic tube Lillian complained of experiencing severe breathing problems, and pulled the gastric tube from throat and stomach as documented in the medical records of the attending registered nurses at the hospital .Lillian also complained frequently of being cold.

16

30. It is factually alleged that Defendant physicians from August second throughout 8/04/02 witnessed by direct observation continued bleeding by Lillian Abner from the surgical incision until death the following morning on 8/05/02 .Such observation is directly documented in Diagnosis and Progress records by both Donald Kirby as "Oozing " from incision " on 8/03 , and 8/04/2002 by documentation of Phillip Travis. Direct witness of the continued bleeding is confirmed by documentation of Doctors Orders from Brian Arcement and Terry Wilsdorf, M.D's by attending Nurses.

31.It is factually alleged Lillian Abner was given insulin at the order of physician as revealed by the medication chart of the medical records from August 3 until the time of death . Patient also received morphine from 8/02/02 due to severe pain from the surgery and also morphine due to severe. It is further alleged that the nurses initially upon observation of the continued bleeding from surgical wound by Lillian Abner did page Physicians  Donald Kirby,  Brian Arcement , Jeffry Ickler and Gregory McGee regarding the profuse bleeding of Lillian Abner after surgery ,and neither Physician returned the calls. On 8/05/02 Lillian Abner died with no pacemaker ever implanted.

32. On 8/05/02 immediately after death of Lillian Abner the Abner family requested an autopsy be performed by Mobile Infirmary Medical Center. A final autopsy/ medical treatment/pathology report was received in Los Angeles in year 2002 by the Abner family. Brian Arcement , admitting physician acted as informant regarding the pathology/ medical/treatment of patient received while hospitalized from 7/30 until death8/05/02. Mobile Infirmary Medical Center wrote an autopsy reports of pathology based on observations of systems and organs of body at time of death of Patient . Only three (3) of twenty one (21) slides taken of the body of Lillian Abner the time of death were referenced in the autopsy report.

33. The final Pathology/ Medical report of Brian Arcement failed to disclosed relevant facts of post surgery complications of continued bleeding until death incurred by Lillian Abner that was observed first hand by Brian Arcement , Mobile Infirmary Medical Center and the other Defendant Physicians. The profuse loss of blood is indicated in hematology charts in the records which Abner family due to unfamiliarity with evidence was unable to interpret. The final autopsy/pathology report of Brian Arcement and Mobile Infirmary Medical Center surpressed facts that Lillian Abner , although not a

18

diabetic was ordered administered the drug Insulin for three days until

death along with Morphine  in relation to symptoms of shock arising

from from the continued bleeding. Morphine was also injected in

Lillian along with the intervenous dialyis solution..

34. Said report by Brian Arcement fradulently declares  that patient

was successful cardioverted which is disproved by fact that the 2005

autopsy report performed by Glenoakes Hospital shows negligence

occurred by fact pacemaker was needed after cardioversion, that the

procedure was authorized by Lillian Abner , but never implanted. In

addition said medical Said report declares freadulently as shown by

the medical records that the pacemaker was never implanted as family

dissuaded Lillian .

35. The year 2002  pathology report of Brian Arcement states as

cause of death cardiac arrest due to cardiomyiopathy (disease) . The

2005 pathology report by Glenoakes Pathology Associates decalares

in reference to hematology charts and other evidence in the record that

death was due directly to to hypovolemic shock due to loss of oxygen

to heart and shock occurring from severe pain. The year 2002

autopsy/pathology failed to report that Lillian Abner who was not a

diabetic was treated with insulin after the vascular surgery due to

19

symptoms of shock occurring the second day thereof ,and was

prescribed morphine due to severe physical suffering and pain the first

day after surgery.

37. Brian Arcement, M.D. four (4) months after the death of Lillian

Abner in year 2002 relocated in 12/02 to Florida and began practicing

, and continues to practice medicine in said state.

38. Said suffering of Lillian Abner as fore referenced is declared by

Glenoakes Pathology Medical Associates as to have arisen from

complications of improper and unnecessary vascular exploratory

surgery of an invasive nature . Such surgery was performed on Lillian

Abner by authorization of Phillip Travis, Brian Arcement, Primary

Care and Admitting Physicians respectively.

39. The 2005  Pathology Report by Glenoakes Pathology Group finds

in contrast to the Medical /Pathology report of Brian Arcement and

Alabama Quality Assurance foundation negligence by defendant

physicians and hospital as the cause of wrongful suffering of Lillian

Abner that transpired for four days until death days later. The

negligence mentioned specifically in the 2005 post autopsy report pin

pointed specifically by evidence mentioned from medical records and

slides declares failure of Brian Arcement and Michael O'Dowd to

20

implant a pacemaker Lillian after failed cardioversion , and declares

as to the remaining six (6) Defendant physicians acts or omissions of

misdiagnosis , improper surgical exploratory procedure, breach of

standard of medical care or failure to obtain informed consent

physicians .

40. The Autopsy report performed by Mobile Infirmary Medical

Center utilized only 3 of 21 slides in the autopsy , and also

misrepresented the physical being Lillian Abner Abner just prior to

death. The autopsy report performed reported diseases present at death

that were later found in the 2005 autopsy report to be inexistent.

Specifically said report listed as existent at the time of death of

pneumonia in relation to severe post surgery breathing problems

experienced by Lillian Abner as reported in the medical records .

41. The autopsy report of Lillian done by Mobile Infirmary Medical

Center in 2002 also reported disease of artersclerosis of the aorta of

the heart although a 2005 report by Glenoakes Pathology Center

found that an echocardiogram taken 5 days earlier should no chronic

disease of the artery of the heart..

21

40. On September 2002, five (5) months after death of Lillian and as informant physician in the autopsy report , Brian Arcement , admitting doctor relocated to Florida to practice.

41. Two years prior in year 2002 the Abner family filed a complaint with the  California Medical Review Institute,(CMRI), a Peer Review Group in California serving to  investigate complaints against medical physicians and entities  under the Medicare Act, which decedent was a beneficiary of act  thereof before death . Complaint alleged negligence by Defendants by misdiagnosis, failure to implant pacemaker , failure to render standard care to Lillian and failure to obtain informed consent. The referenced agency advised the Abner family to submit said complaint to the Alabama Quality Assurance Foundation, (AQAF) a Peer Review Group also.

42. The AQAF received complaint, and conducted an investigation. by submitting  the complaints to named Defendants in this current complaint whereby Defendants did responded. Said agency found no negligence based clearly on the apparent denials of charges therein complaint , and withholding of facts by Defendant physicians and medical entity of negligence upon investigation by the AQAF. The investigation also relied on the findings in the year 2002 autopsy

report performed by Mobile Infirmary Medical Center and Brian

Arcement. The AQAF as alleged utilized in review in addition the

year 2002 autopsy report .

43. On 9/12/02 Abner family contacted the Law Offices of Henniger,,

Burge Davis, Fargo and Vargas of Birmingham , Alabama that

practices medical malpractice law in an attempt to file an action

against defendants. Mr. Greg Burge agreed to , and did review the

medical records which included the autopsy report. The Abner family

was thereafter informed by the law firm of inability to secure Firm's

representation for an action due the findings in the year 2002 autopsy

/pathology report of complications and the direct cause of death

specifically report as solely cardiac arrest secondary to heart disease .

44. The Abner family attempted to retain other medical malpractice

law firms in Alabama and Georgia including the Law Firm of Johnny

Cochran to bring an action , but based on the year 2002

autopsy/pathology report of Brian Arcement/Mobile Infirmary

Medical Center was unable to obtain representation . In July 2004 due

to fore referenced inability and futility despite deligence, a federal

action for medical malpractice against the parties in the current

complaint was filed in 7/2004 in Pro Se by the Abner family. Said

claims alleged causes of action for Medical malpractice under 42

Federal Code of Regulation solely due to failure by defendants to

obtain the informed consent before performing interventions on

Lillian Abner, a claim for deprivation of constitutional rights and a

claim under state law pursuant to Alabama Code for Wrongful death

by the Abner family in the United States District Court, Southern

District, and a claim for violation of constitutional rights.

45.  Said fore referenced complaint was dismissed on grounds of lack

of jurisdiction, failure to state claims of deprivation of constitutional

rights . The Court also judged the complaint failed to state a claim for

wrongful death as Plaintiff's were not the legal representatives  of

Lillian Abner. Upon dismissal, an  appeal for review of the order was

made solely regarding denial of grant to amend claim for deprivation

of Constitutional Rights. The United States Court of Appeal, Eleventh

Circuit affirmed appeal , but determined that 42 Federal Code of

Regulation did require obtainment of consent before medical

intervention. .Said decision affirming the dismissal of the order by the

United States District Court on 8/31as mandate on September 29,

2005

24

46. The appeal for review by Plaintiff relied on case Public Citizens

Vs. United States Department of Health and Human Services,

whereby discovery occurred during research that a Citizens Group had

legally challenged in year 2003 the procedure by Peer Review

Agencies as to disclosure , thereby leading to a change in the laws.

47. The Abner family after the order of the United States District

Court of Southern Alabama was affirmed did again contact Alabama

Quality Assurance Foundation (AQAF) requesting review of

decisions by the Peer Review Team of Alabama. Review was

requested as the Abner family had discovered the laws had changed

pertaining to report of findings by Peer Review Teams in regards to

complaints of standard of care rendered by physicians. Upon speaking

to Cynthia Mc"Intosh of AQAF Plaintiff's were told the findings

were made according to new laws, and no new review would be made.

48. On Sept 25, 2005 the Abner family requested the medical slides

from Mobile Infirmary Medical Center used in the autopsy report, and

thereafter retained Glenoakes Pathology Medical Assoc. (GPMA) of

Los Angeles County to perform an post autopsy report based on the

medical records and slides of Lillian Abner. A preliminary decision

based on the medical records in possession of family  was made by

GPMA in September 10, 2005..

48.The final determination made in a December 2005 autopsy

/pathology report by GPMA found that misdiagnosis had resulted in

the vascular invasive exploratory, and the blood from surgery had

resulted in shock . The report questioned the use of a a vascular

invasive procedure of surgery to determine if abdominal disease was

present in Lillian Abner..

49. On or around 9/15/05 the Abner family wrote Mobile Infirmary

Medical Center requesting a new autopsy report be performed in

regards to the preliminary findings by GPMA, and the 2002 findings

by Mobile Infirmary as to the death of Lillian Abner  whereby only 3

of 21 slides were used as referenced in the 2002 report. Also a new

autopsy report was requested regarding the preliminary findings by

Glenoakes Pathology Associates of hypovolemic shock arising from

blood loss as the cause of death of Lillian Abner.  No response was

received from Medical Center who is party.

50. On October 14, 2005 Janice Abner contacted the Alabama

Attorney general alleging fraud and misdiagnosis by Mobile Infirmary

Medical Center. Boyd Reeves, Attorney who represented Brian

26

Arcement . M.D. in the federal case of medical malpractice brought
by family of Lillian Abner responded to complaint and stated
disagreement in response. No response was heard from the Attorney
general of the State of Alabama.

51. On 2/24/06 the Abner family contacted the Office of the United
States Attorney , Department of Justice  alleging fraud in the autopsy
report by Mobile Infirmary Hospital as pertains to 2005  discovery
regarding interventions performed by hospital and physicians listed
also as parties which Alabama Quality Assurance Foundation as a
peer group under contract with the Federal Department of Health and
Human Services found no negligence . A copy of the 2005 autopsy
report by Glenokes Pathology Group, Associates was also submitted
along with the year 2002 autopsy reported that was performed by
Mobile Infirmary medical Center.

52. On Feb.24/06 Plaintiff's filed complaints with the United States
Attorney and Alabama Hospital Association alleging fraud as to the
autopsy report of Mobile Infirmary Medical Center. Said complaint
was filed with the Federal office of the United States Attorney as
Defendants were all acting under Medicare at the time Lillian Abner
entered Mobile Infirmary hospital until death . Said office filed the

27

complaint of Plaintiff and the 2005 autopsy report performed by

Glenoakes pathology Associates to the Alabama medical Licensing

Board, the Office of Public health of Alabama , and the Alabama

Qualioty Assurance Foundation . The agencies of the Alabama

Medical Licensing Board and the Public Health Agency are currently

performing an independent investigation

53. In April 2006 the Abner family had just prior filed complaints

with the Alabama Medical Licensing Board re alleging complaints

against parties alleged to the Alabama Quality Assurance Foundation

in 2003.

54. As forestated in the preliminary statement On 6/26/06 Janice

Abner filed a petition in the Probate Court of Alabama, Mobile

County Division petitioning the Court to open up the estate Lillian

Abner and appoint daughter as executor , or in the alternative for the

Court to appoint their Executor.  Plaintiff talked with the Clerk of

Probate Court regarding the appointment of a County Executor to the

Estate of Lillian Abner, and is awaiting further notice from the Court

as to the petition.

55. Plaintiff re files this complaint nine ( 9 ) months subsequent to the

decision by the United States Court of Appeals ,  Eleventh Circuit that

28

the claims in the federal actions for malpractice were state law claims.

Complaint is timely as to the two year statue of limitations under

Alabama law for medical malpractice has been suspended and

converted into a four year statute by fraud.

### V CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF.  Alabama Code , Sections 6-5-101 and
Section 6-5-102; **FRAUD**

Plaintiff's allege as factual set forth in paragraphs 31 thru 35 of this

complaint that Brian Arcement , Cardiologist did violate Alabama

Code, Section  6-5-102to conceal and suppress the true facts of

medical negligence  by himself and the defendant physicians named

in this complaint , four (4)  who were also medical associates at the

Mobile Diagnostic and Medical Center by  inter alia as incorporated

in this complaint by facts in  paragraphs 31 thru 34, and 39 and 40:

Non disclosure in the final medical and diagnostic report of

complications existent  the first day after surgery until death of Patient

causing severe suffering and breathing problems. Said physician did

failed to disclose the treatment ordered by said physician and staff

indicative of the  complications arising from surgery due to

misdiagnosis which led to severe and continued bleeding of Lillian

Abner, and wrongful suffering and death. Thereby due to the non

disclosure Family was unable to secure the Legal representation in year 2002 of Burge , Heninger , Vargo and Davis, medical malpractice Attorneys  , nor  a fair review of the complaint to the Alabama Quality Assurance Foundation alleging failure to use standard professional judgment and procedure in the care of Lillian Abner by Defendants.

Plaintiff alleges fraud by suppression and misrepresentation  of facts by Donald Kirby, Gregory McGee, Michael O'Dowd , Phillip Travis and Terry Wilsdorf , Physicians in acting as Respondents to the charges of negligence to the complaint by the Abner family to The Alabama Quality Assurance Foundation. Fraud occurred  in denial of negligence by Defendants  in view of either refusal to act to implant pacemaker after securing the authorization of Patient, or knowledge by being informed by hospital staff and thereafter by first hand, but delayed witness of profuse bleeding by Lillian Abner for a period of four and one days arising from vascular surgery that was was performed .Plaintiff could only prove such negligence by facts as given in the 2005 autopsy report based largely on medical records of decedent from year 2002 which clearly prove gross negligence by said physicians.

Such denial by Defendants resulted in the futility of all efforts to obtain legal representation in Alabama or the surrounding states from the period of death .

The medical entity of Mobile Infirmary medical Center surpressed evidence and did engage in misrepresentation by failure to disclose in autopsy report as incorporated in paragraphs 39 and 39 findings of 19 of 21 slides taken of the body of Lillian Abner, and only reported conclusions and findings from 3 of the twenty-one (21) slides taken of the body of Lillian Abner . Misrepresentation did occur by declarations declaring states existent at the time of death of pneumonia in relation to the breathing problems incurred although radiological tests performed just prior to death that found no pneumothorax. The Pathology department of Mobile Infirmary hospital also listed present at death an enlarged heart which the medical report of Brian Arcement based on an echocardiogram one week earlier refutes.

Second CAUSE OF ACTION; Alabama Code; Section 22-8-1
## Medical Malpractice ,

46.Plaintiffs Clarence and Janice Abner incorporates herein by reference as fully set forth in this complaint acts of medical malpractice as to each Defendant named as follows:

3 /

47.Plaintiffs alleges as incorporated in paragraphs 13, 15 and 25of this complaint that Mobile Infirmary Hospital through Staff Radiologist Richard  Wilson through negligence along with Donald Kirby , M.D. did misdiagnosis results  a CT scan as a messenteric thrombosis of the abdominal area of Lillian Abner thereby leading to the performance of vascular surgery on patient whereby bleeding and breathing complications thereafter arose that led to the wrongful death of Patient.

48. Brian Arcement Cardiologist and Associate with the Diagnostic and Treatment Center Medical Group as alleged in paragraphs 3, 7, 9,11&12, 16 & 17,,19 thru 21, 26 & , 29, 32 &33, 36 and 38thru 39 did cause Lillian to wrongfully suffer and in relation by negligence through inter alia :

Gross breach by Brian Arcement, Physician  of standards of professional and  medical care rendered to Lillian Abner by failure to ensure a pacemaker was implanted in patient after severely  irregular heartbeat occurred from failed cardioversion. Physician ordered cardioversion be placed on hold after patient had authorized by signature the procedure .

32

Brian Arcement after Lillian when informed that procedure would be delayed insisted to Brian Arcement apparently fearful of such delay that she wanted the device implanted as scheduled  Cardiologist and admitting physician failed to exercise care in conformity with standard medical  norms by performing cardioversion on Lillian Abner as the procedure to correct the arrithmias of the heart rather than the pacemaker that was never implanted.

Brian Arcement , Cardiologist , and admitting physician did cause Lillian Abner to suffer severely for five days whereby such sufftering was prior inexistent by breaching  standard of medical care by authorizing vascular invasive surgery performed on Lillian Abner although cognizant that patient absent implantation of the pacemaker was dependent on drug therapy of Caumadin, a blood thinner used as an anticoagulant.

Brian Arcement  also aware that Patient was dependent on hemodialysis whereby solution contains a blood thinner Hephrin. Caumadin was discontinued briefly during hospitalization, and thereafter in relation gastritis and bloody stool by Lillian, a test was obtained reporting elevation in tyromatin T cells leading physician to

33

co authorize vascular surgery on suspicion of blood clot to abdominal

area based on conflicting radiological reports.

Brian Arcement , Cardiologist , and treating and admitting physician

did cause Lillian Abner to suffer severely both physically and

psychologically by failure to adhere to standard clinical /medical

treatment and judgment. Said physician knew patient Lillian Abner

had a medical history of bronchial asthma that could be triggered by

allergies , and knew or should have known that the gastric surgery

would require implantation of synthetic device in patient mouth to

stomach tent asthma. Such implantation was one of the factors that led

to Lillian experiencing excruciating suffering over five days due to

complications in breathing and also complications arising from the

blood loss of the surgery.

49. Donald Kirby: Gastroenterologist /Internist and Associate with

the Diagnostic and Treatment Center Medical Group did as alleged in

paragraphs 13 & 14, 20 ,21, 25 and 31of this complaint did grossly

breach standards of professional care and caused Lillian Abner to

suffer excruciating physical and psychological pain for five days

never prior experienced and that ensued in wrongful death of patient.

Said physician examined   Lillian Abner without the informed consent

34

of patient of family. Said Physician thereafter and thereby did order

and obtained two radiological examinations of abdominal area of

Patient Lillian Abner . Donald Kirby , Gastroenterologist and Internist

did misdiagnosed in conjunction with the hospital staff radiologist

based on conflicting diagnostic results presence of embolic in the

abdominal area diagnosed as mesenteric thrombosis a disease in the

abdominal inexistent. Said misdiagnosis led to vascular surgery

performed on Lillian Abner, and profuse post surgery bleeding and

pain from the surgical incision requiring morphine thereafter until

death after five (5) days later. ..

Said physician Donald Kirby as an Gastroenterologist, Internist as a

staff physician and medical Associate with Mobile Medical  knew

Lillian Abner suffered from pulmomary asthma , and therefore knew,

or should have known that invasive vascular surgery of the abdominal

area would require implantation of a synthetic tube for feeding

whereby allergies could trigger asthma and severe breathing problems

.and wrongful psychological and physical suffering. Donald Kirby

also failed to treat patient as needed post operatively for bleeding ,

and on one occasion did not return call when paged by hospital staff

nurse in regards.

50. Jeffry Ickler, Surgeon and Affiliate with the Mobile Medical and Diagnostic Center as alleged in paragraphs 22, 23 and 31 did co assist in the performance of invasive vascular surgery on Lillian Abner absent obtaining the written and informed consent of Patient violation of Alabama Code Section 6-5-484. Said surgery led to post profuse bleeding and respiratory complications from loss of blood and wrongful suffering and death of Lillian Abner . Jefferey Ickler , Surgeon thereafter failed to provide post surgical treatment of Lillian Abner in regards to bleeding from the surgical wound.

51. Gregory McGee, Surgeon as alleged in paragraphs 22, 23, 35 and 31, of this complaint did grossly breach standards of professional care and judgment and caused Lillian Abner to experience excruciating physical pain and psychological anguish for five days and subsequent wrongful death by performing invasive diagnostic surgery assisted by Jeffry Ickler on Lillian Abner without the written or informed consent of Patient, and over the adamant objection of the daughter which led to post profuse bleeding from the surgical wound. Said physician knew Patient was dependent on dialysis, that such patients bleed freely from wounds or bruises , and had prior performed a surgical procedure on the arm to insure access to dialysis.

36

52. Michael O'Dowd , Cardiologist and Consultant as incorporated in paragraphs 8 & 9, 11 & 12, 15 and 29 of this complaint did fail to advise  Brian Arcement of the necessity of a pacemaker implantation, and after securing the consent of Lillian Abner for such implantation, breached duty by failure to insert device .

53.  Phillip Travis, Nephrologist and Primary Care Provider did grossly breach professional medical duty and standard of care as incorporated in paragraphs 3 &4, 10,15, 18 &19, 21, 26 & 27, 29 & 30, 38 & 39 and 48 of this complaint, thereby causing Lillian Abner to suffer excruciating physical and psychological pain .Said physician did fail to render consultation to treating physicians Brian Arcement , Michael O'Dowd and examining physician Donald Kirby and Hospital Staff Radiologist William Dumas regarding other possible causes of suspected bleed clot in the abdominal area arising from heart problems of Lillian Abner in relation to the symptoms of bloody stool and gastritis problems and as to any suspicion of a blood clot in the abdominal area from report of elevated  Tyromatin Tcells. Such consultation would caused for further diagnostic tests to be rendered as to any suspicion of myocardial injury..

37

Phillip Travis as a Nephrologist knew, or should have known that Lillian Abner received hempodialysis at said Physician's order at the hospital, had received hemodialysis approximately ten (10) hours before the symptoms and foremost that the dialysis solution contained Hephrin, a blood thinner which causes appearances of blood in the stool.

Phillip Travis as the Primary Care Physician did fail to order more testing be performed before consenting to operation of patient in view of the conflicting radiological results obtained in regards to suspected embolic in gastric area from pre operative diagnostic exams . Phillip Travis , re provider known that Lillian Abner has a pre existent diagnosis of pulmonary asthma, and that abdominal surgery would require implantation of a synthetic tube into the throat into the stomach.

54. Maher Sahaweh , Pulmonary/Respiratory Physician and Associate Physician at Diagnostic and Treatment Center Medical Group did as incorporated in paragraphs 27 and 28 did absent obtainment of consent from Lillian Abner or family and family did examine and ordered treatment of patient for severe breathing problems arising

38

from the unauthorized vascular surgery in violation of Alabama

Code, Section 6-5-484..

55. Terry Wilsdorf, Cardiologist and Associate Physician with the

Diagnostic and Treatment Center Nedical Group did violate Alabama

Code ,Section 6-5-484 as alleged in paragraphs 22, 24, and 31of this

complaint by assisting in the operation of Lillian Abner absent

obtaining the informed consent of patient nor family. Said physician

awoke patient from sleep to be placed under general anesthesia for

invasive surgery . Terry Wilsdorf post operatively failed to provide

adequate care to Lillian in regards to the continued bleeding from the

surgical wound.

53. Lillian Abner   patient placed under general anesthesia in

preparation for surgery absent consent of patient and over adamant

objections of the family in the presence of Terry Wilsdorf, Associate

Physician at Diagnostic and Medical Center of Mobile..

### Third Claim For Relief: Wrongful Death : Pursuant to Alabama Code , Section 6-5-548

Plaintiffs allege as set forth in paragraphs 3, and 6 thru 38 of this

complaint that the medical malpractice by defendants did result in the

abbreviation of life, and therefore wrongful death of Lillian Abner.,

and it is submitted that all Defendants circumvented the pursuit by the

Abner family in the administration of justice in the years 2003 and

2004 by denials of the charges of negligence as causing the wrongful

suffering and death of Lillian Abner as relates to the complaints

thereof as alleged by the Abner family investigated by the Alabama

Quality Assurance Foundation .

### PRAYER

Plaintiff Janice Abner does pray for as follows:

1.Punitive  damages in the amount awarded as found necessary to to

deter future behaviors of medical practitioners and medical entity of

fraud ,negligence and breach of standard medical , ethical and

professional care which results in the wrongful death and suffering of

persons in their care.

2. For reimbursement of funeral expense and burial of Lillian Abner

3. For reimbursement by Mobile Infirmary medical Center of the

2005 autopsy report secured in Loss Angeles County after Mobile

Infirmary Hospital refused to conduct a second autopsy /pathology

report regarding the death of Lillian Abner upon prior request in year

**Demand for Jury Trial**

STATE OF AL. MOBILE CO.
I CERTIFY THIS
PLEADING WAS FILED

Dated : July 26, 2006

2006 JUL 31  A 11: 59

*Susan F. Wiles*
CLERK CIRCUIT COURT

By *Janice Abner*

Janice Abner, Plaintiff
888 VICTOR AVENUE   #16
INGLEWOOD,  CALIF  90302

40