IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JANICE ABNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07CV146-WKW |
| | ) | |
| ALABAMA BOARD OF MEDICAL EXAMINERS, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this action, plaintiff Janice Abner, proceeding *pro se*, alleges that her mother, Lillian Abner, died in 2002 as a result of the inadequate care she received from seven white male physicians and the Mobile Infirmary Medical Center, a private entity. Plaintiff further alleges that she lodged complaints with the Alabama Board of Medical Examiners and the Alabama Department of Public Health and that, after she received a post-autopsy report from Dr. David Posey suggesting that her mother's death was caused by negligence, she also sent a letter of complaint to the United States Attorney for the Southern District of Alabama. Plaintiff alleges that the U.S. Attorney's office then sent correspondence to the defendants requesting an investigation.

Plaintiff complains that the investigation conducted by the Alabama Board of Medical Examiners was inadequate. She alleges that its finding that the physicians had not breached the standard of care was "based on numerous incorrect findings," and that those findings are contradicted by medical records in her possession. Plaintiff further asserts that the Alabama

Department of Public Health conducted no investigation at all. She claims that, by these actions, the defendants discriminated against her on the basis of her race (African American) and gender in violation of her rights under the equal protection clause and 42 U.S.C. § 1981.

Plaintiff further claims that the Alabama Board of Medical Examiners, through its executive director, Larry Dixon, violated her First Amendment rights by filing a complaint against plaintiff and Dr. Posey – the physician who provided the post-autopsy report finding negligence – with the American Board of Pathology and the California Board of Medical Examiners. Plaintiff contends that Dixon abused his position to deny plaintiff her First Amendment right "to seek fair and valid redress of grievance."

Plaintiff seeks an injunction: (1) requiring the Alabama Board of Medical Examiners to conduct an investigation that is "th[o]rough and fair yielding valid findings based only [on] information taken from the total medical records (203 pages) to exclude reports directly received from physicians," and that those "findings conform with the evidence and medical research and opinions by national physicians and not just an opinion by a physician of the A.B.M.E.;" (2) requiring the Alabama Department of Health to commence an investigation; and (3) ordering the Alabama Board of Medical Examiners to "cease and desist denial of First Amendment Right of Plaintiff to file Complaint absent interference by the government to deny redress thereof by cross complaint unrelated to issues lodged by complaint." (Complaint, pp. 15-16).

This action is presently before the court on the motion for summary judgment filed August 22, 2007 by plaintiff (Doc. # 25), the motion for summary judgment filed by

defendant Alabama Board of Medical Examiners on August 24, 2007 (Doc. # 27), and the motion for summary judgment filed by defendant Alabama Department of Public Health on August 20, 2007 (Doc. # 23). Upon consideration of the motions, the court concludes that plaintiff's motion is due to be denied and the motions of the defendants are due to be granted.

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact. Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves. . . ."

Id. at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence

or absence might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## DISCUSSION

### Alabama Board of Medical Examiners

In its motion for summary judgment, the Alabama Board of Medical Examiners (ABME) argues, in part, that the exhibits attached to plaintiff's complaints do not establish her claims for civil rights violations and that the certified exhibits it has attached to its motion demonstrate that the ABME performed its statutory duty to investigate plaintiff's complaint regarding her mother's medical care.

One of the documents attached to plaintiff's complaint and also filed by defendant

4

ABME is an affidavit signed by William F. Addison which lists the documents which were considered in investigating plaintiff's complaint. Addison states that the listed records were reviewed by a board certified vascular surgeon. They included the medical records of Lillian Abner subpoenaed from the seven physicians against whom plaintiff lodged her complaint, the medical record of Lillian Abner subpoenaed from the Mobile Infirmary Medical Center, plaintiff's letters of complaint to the US Attorney and the U.S. Department of Health and Human Services, letters of response from the physicians, and an August 5, 2002 autopsy report of Dr. Brian Arcement. Addison states that plaintiff's complaint to the ABME was considered, along with attachments to that complaint which included, *inter alia*, Dr. Posey's letter and *curriculum vitae* and "[s]even pages of medical records from Mobile Infirmary Medical Center[.]"[1] (Addison aff., Exhibit E to plaintiff's complaint and Defendant's Exhibit 5).

Additionally, Exhibit F to plaintiff's declaration is a September 7, 2006 letter to plaintiff from Larry D. Dixon, the executive director of the ABME, explaining that the Board considered plaintiff's complaint at its August 16, 2006 meeting and found that there was no evidence to support her complaints against the physicians.

---

[1] Plaintiff's complaint appears to be based largely on her misconception that Addison stated in his affidavit that the ABME considered only seven pages of Lillian Abner's medical record. See Complaint, p. 11, ¶ 24 ("[T]he investigation of the complaint against the physicians lodged through the Office of the United States Attorney transpired by securing less than one fourth (7 of 203) of the medical records from the hospital of decedent constituting concealment through investigation."). However, as noted above, Addison testified by affidavit that the board subpoenaed the "medical record of Lillian Abner" from the Mobile Infirmary Medical Center. (See Addison aff., ¶ 13). Addison's only reference to seven pages is in the quoted portion of the affidavit in which he lists the attachments to plaintiff's March 15, 2006 complaint to the ABME. (See Addison aff., ¶ 2d).

In response to the motion for summary judgment, plaintiff has filed her own declaration. (See Abner declaration included within Doc. # 31). In that declaration, plaintiff sets forth the chronology of her complaints to the defendant – both her direct complaint and the complaint filed through the office of the U.S. Attorney for the Southern District of Alabama. She states that the report contains erroneous statements regarding Lillian Abner's hospital admission, and contends that the exhibits attached to her declaration demonstrate that the investigation was inadequate and led to the Board's erroneous finding.[2]

Equal Protection. Plaintiff claims that the Board's action with regard to the investigation of Lillian Abner's death violates plaintiff's equal protection rights.

> The Fourteenth Amendment's Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Clause "directs that 'all persons similarly circumstanced shall be treated alike.'" Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982) (quotation omitted). "But so too, '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'" Id. (quotation omitted, alteration in original).
>
> In order to establish a violation of equal protection, a plaintiff must demonstrate that the challenged action was motivated by an intent to discriminate. Washington v. Davis, 426 U.S. 229, 239-48, 96 S.Ct. 2040, 2047-52, 48 L.Ed.2d 597 (1976). "Discriminatory intent may be established by evidence of such factors as substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and discriminatory statements in the legislative or administrative history of the decision." Elston

---

[2] Plaintiff submits that Exhibit G to her declaration contradicts Dixon's letter regarding the ABME's findings. However, the court is unable to determine that Exhibit G, which includes a one-page admission assessment, a one-page intraoperative record and a one-page invoice billing plaintiff for medical records, contradicts Dixon's letter at all, let alone in any way relevant to the claims in this action.

[v. Talladega County Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993)].

Carr v. Board of Regents of University System of Georgia, 249 Fed.Appx. 146, *149, 2007 WL 2753046, **3 (11th Cir. Sept. 24, 2007)(unpublished opinion).  Plaintiff vehemently argues that the ABME investigation was insufficient and the conclusion invalid.  However, even *assuming* that this is so, plaintiff has pointed to no evidence of record which would permit a reasonable inference that the actions of the ABME were based on plaintiff's race or gender and, thus, defendant's motion for summary judgment is due to be granted on this claim.[3]

Section 1981.  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]"  42 U.S.C. § 1981(a) .  "[Section] 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination."  General Bld. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 390 (1982).  Again, plaintiff has introduced no evidence – and the court has found none – which would permit a reasonable inference that the manner in which defendant conducted its investigation was motivated by plaintiff's race.  Accordingly, she may not

---

[3] Plaintiff alleges, but does not produce evidence, that she is an African American female and the seven physicians are Caucasian males.  Even if this is true and plaintiff had introduced evidence to that effect,  she would still lack sufficient evidence to demonstrate the existence of a genuine issue of fact regarding whether the ABME's actions were motivated by plaintiff's race or gender.

maintain her Section 1981 claim.

<u>First Amendment</u>. Plaintiff appears to claim that defendant, through its executive director, retaliated against her in violation of her First Amendment right to seek redress for her grievances by filing a complaint against her and Dr. Posey with the California Board of Medical Examiners and the American Board of Pathology. (<u>See</u> Complaint, pp. 12, 14-16). She further asserts that the ABME violated her First Amendment rights when it "fraudulently answered complaint constituting denial of complaint." Plaintiff alleges that the violation of her civil rights occurred on September 7, 2006 and October 19, 2006. (Complaint, Doc. # 1, p. 18, ¶ 4). The former date coincides with the date of Dixon's letter to plaintiff advising her of the ABME's findings on her complaint against the physicians (<u>see</u> Exhibit D to plaintiff's declaration included within Doc. # 31). The court is unable to relate the October 19, 2006 date to any evidence of record. However, by letter dated *September* 19, 2006, Dixon complained to the California Board of Medical Examiners about Dr. Posey's report. (<u>See</u> Exhibit filed with plaintiff's motion for summary judgment, Doc. # 25-3, pp. 24-25).[4]

To prove a First Amendment retaliation claim, plaintiff must establish: (1) that her speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the retaliatory actions and the adverse effect on speech. <u>Bennett v. Hendrix</u>, 423 F.3d 1247,

---

[4] The answer to plaintiff's petition for writ of mandamus in the Montgomery County Circuit Court was filed on November 8, 2006. (<u>See</u> Exhibit J attached to plaintiff's declaration, Doc. 31-11, pp. 2-5). Accordingly, plaintiff does not appear to claim that this pleading filed in Circuit Court by the defendant violated her First Amendment rights.

8

1250 (11th Cir. 2005). Dixon's September 7, 2006 letter to plaintiff was simply a report to plaintiff of the results of the investigation of her complaint. The court cannot conclude that this constitutes retaliatory conduct. Even if it were "retaliatory conduct," it is not of a nature that would deter a person of "ordinary firmness" from continuing to engage in the protected activity of filing a complaint and, thus, cannot support plaintiff's First Amendment retaliation claim. See Bennett, *supra*.

Dixon's September 19, 2006 letter to the California Board of Medical Examiners asked that body to address the ABME's contention that Dr. Posey's report to plaintiff was based inappropriately on an incomplete record and that his conclusions were overstated and lacking in merit. This letter was directed to the conduct of Dr. Posey, addressed to a board apparently tasked with oversight of Dr. Posey's professional conduct, and any effect the letter might have on the plaintiff or others seeking to file complaints is indirect. The court concludes that this action by the ABME does not constitute retaliatory conduct sufficient to deter a person of "ordinary firmness" from making a complaint to the ABME and, thus, that it is insufficient to support a First Amendment retaliation claim. Accordingly, defendant ABME is entitled to summary judgment on plaintiff's § 1983 First Amendment retaliation claim.[5]

---

[5] In her response to the ABME's motion for summary judgment, plaintiff asserts that she served interrogatories on the ABME on July 28, 2007 and that the defendant has refused to respond to the interrogatories. (Doc. # 31, pp. 11-12). Plaintiff has not moved to compel responses to the interrogatories. The court declines to construe plaintiff's assertion regarding defendant's failure to respond as a motion for relief pursuant to Fed. R. Civ. P. 56(f), as her declaration does not meet the requirements of such a motion. In moving for a continuance or stay pursuant to Rule 56(f), "'[t]he

**Alabama Department of Public Health**

Plaintiff brings § 1981 and equal protection claims against the Alabama Department of Public Health (ADPH), alleging that it discriminated against her on the basis of her race and gender by failing to investigate her complaint regarding Lillian Abner's medical treatment. Plaintiff seeks declaratory relief and an injunction requiring defendant ADPH to commence an investigation and make findings as to plaintiff's complaint regarding the Mobile Infirmary Medical Center, its radiologists and its staff physicians, and directing that the investigation be thorough and its findings valid. Defendant ADPH has filed evidence that on July 24, 2007 – five months after the complaint was filed in the present action – it commenced an investigation of plaintiff's complaint regarding the Mobile Infirmary and that it concluded that investigation on August 6, 2007. (Blankenship aff.). ADPH communicated its finding that no improper treatment had occurred to the plaintiff on August 10, 2007. (Duck aff.).

Defendant argues that since plaintiff has now received the relief she sought against the ADPH, her claim against it is moot. Plaintiff admits that ADPH served her with notification of its findings, but argues that her request for relief is not moot because that

---

nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts,' but must show the court how the stay will operate to permit him to rebut, through discovery, the movant's contentions." Barfield v. Brierton, 883 F.2d 923, 931 (11th Cir. 1989)(quoting SEC v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir. 1980)). Additionally, even though the plaintiff has not met her burden under Rule 56(f), the court has reviewed the interrogatories served by the plaintiff and finds that responses to those interrogatories would not provide plaintiff with evidence to overcome the motion for summary judgment.

notification: (1) does not disclose the name of any respondents contacted in investigating the complaint; and (2) does not disclose "any standard for investigation of complaint charges." (Plaintiff's response to ADPH motion for summary judgment, Doc. # 30, pp. 2-3).

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome. . . . If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed." Troiano v. Supervisor of Elections in Palm Beach County, Florida, 382 F.3d 1276, 1282 (11th Cir. 2004)(citations omitted). "[T]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Id. (quoting Arizonans for Offical English v. Arizona, 520 U.S. 43, 68 n. 22 (1997)).

In this case, plaintiff complains of the failure of the ADPH to investigate a complaint filed by plaintiff against the Mobile Infirmary regarding a single event, the hospitalization and death of plaintiff's mother. ADPH has filed evidence that it has now concluded an investigation and has communicated its finding to the plaintiff. In her response to ADPH's motion for summary judgment (Doc. # 30), plaintiff provides no evidence that the investigation conducted by the ADPH was inadequate. As noted above, plaintiff instead argues that the case is not moot because ADPH's notification to the plaintiff did not identify respondents to the complaint and did not disclose a "standard for investigation." However, contrary to plaintiff's argument (See Doc. # 30, pp. 2-3), the statute pertaining to

11

investigation of a complaint that the quality of services did not meet professionally recognized standards of health care at an institution receiving Medicare payments (42 U.S.C. 1320c-3(a)(14)) does not require that the investigating agency notify the complainant of the names of those contacted to respond to the complaint, or of the "standard" it used in investigating the complaint. Rather, the statute requires that the agency "inform the individual (or representative) of the organization's final disposition of the complaint." Id. In this case, the ADPH notified plaintiff that "after reviewing the medical record," it "could not determine that there was improper treatment." (Duck August 10, 2007 letter to plaintiff, Exhibit 2 to Doc. # 30; Exhibit to Duck aff.). Thus, the notification complies with the terms of the statute.

Plaintiff has not demonstrated that there remains additional injunctive relief to which she would be entitled if she were to prevail on her claims that ADPH discriminated against her on the basis of her race and gender when it initially failed to investigate her complaint. With ADPH's completion of the investigation and notification to the plaintiff of its final disposition of the complaint, there is no longer a "live" controversy for resolution by the court. Additionally, an injury occurring to plaintiff in the past by reason of the delay in the investigation does not support a claim for declaratory relief. See Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1347 (11th Cir. 1999)(the court lacks jurisdiction to enter a declaratory judgment unless there exists a reasonable expectation that the injury suffered by the plaintiff will continue or will be repeated in the future. . . . There must be a

substantial likelihood that the plaintiff will suffer future injury: a 'perhaps' or 'maybe' chance is not enough.")(citations omitted); see also Troiano, *supra*, 382 F.2d at 1284 ("'There is nothing left for the court to do on those claims except declare that the practices are unconstitutional for the principle of the matter.  Principle alone unaccompanied by a live case or controversy does not present a justiciable claim.'")(quoting Saladin v. Milledgeville, 812 F.2d 687, 693 (11th Cir. 1987)).  Thus, plaintiff's claim for declaratory and injunctive relief against ADPH is due to be dismissed as moot.

### Plaintiff's Motion for Summary Judgment

Plaintiff has moved for summary judgment on her claims against the defendants. (Doc. # 25).  Where, as here, the moving party will bear the burden of proof at trial,

> that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)(quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)(*en banc*)).  For the reasons set forth above with regard to defendants' motions, plaintiff has not sustained her burden of affirmatively demonstrating that she is entitled to relief on her claims.

### CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge

that: (1) plaintiff's motion for summary judgment (Doc. # 25) be DENIED; (2) that the defendants' motions for summary judgment (Docs. ## 23, 27) be GRANTED; and (3) that this action be DISMISSED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any objections to this Recommendation on or before March 3, 2008. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 20th day of February, 2008.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE